Yes, please proceed. Good morning, your honors. May it please the court and thank you for the accommodation of letting me participate virtually. My name is Kevin Abacoff. I'm a partner with Hughes, Hubbard & Reed. I'm here today on behalf of my client, Imperial Pacific International. Its appeal from summary judgment awarded to Ping Shun Corporation. I'd like to reserve three minutes of my time, if I may, for rebuttal. Please watch the clock. By order dated March the 15th of 2021, the district court granted summary judgment to Ping Shun on its account stated claim, noting specifically in its order that IPI, which is how I'll refer to Imperial Pacific International, had failed to provide any evidence demonstrating fraud, omission, or mistake that would contest the account stated. In April 2021, shortly after reading about this decision in the news media in the Marianas, Chun Lee Wong approached IPI, in his words, for the sake of justice, to share what he knew of the fraud that had been perpetrated by Ping Shun on IPI. Wong's whistleblower revelations were exactly what IPI had suspected but could not prove. Wong had not only been in an intimate relationship with Ping Shun's principal, Chun Ling Zeng, he was her trusted employee, and he specifically assisted her in providing service to IPI, was a witness to her fraudulent activities, particularly her acts of artificially inflating, through various means, the numbers of meals she was providing to IPI employees, and was a witness to a related act of bribery, and even assisted her by translating false evidence meant to provide support for her claim. Counsel for IPI undertook a diligent review of this because an appeal had already been lodged, sought relief in the form of an indicative ruling under Federal Rule of Civil Procedure 62.1, that relief from the summary judgment was warranted under Federal Rule of Civil Procedure 60B, either as newly discovered evidence which was disposition-altering or as evidence of fraud under, respectively, subsections B2 and B3. In seeking relief, IPI introduced not only the powerful declaration of the whistleblower, Wong, based on his personal observations of the fraud undertaken by Ping Shun, but also detailed supporting materials that he had prepared at the request of Ping Shun's principal, Zeng. This new evidence struck at the core of Ping Shun's case, as it demonstrated that the for summary judgment on the account-stated claim were fraudulently inflated. Standing alone, this evidence should properly have been found to change the disposition of the case. That is, it created a genuine issue of material fact as to whether the fraud had been committed, rendering summary judgment on the account-stated claim improper, and thereby satisfying Federal Rule of Civil Procedure 60B2, and as well... Counsel, let me clarify what you're asking us to do in this particular case. If we agree with you that the newly discovered evidence matters or potentially creates issues as to the summary judgment, what are you asking us to do? Reverse and remand the trial court's denial of the motion under 60B2 or 60B3. And then do we need to say anything about the summary judgment, or just have the court make its evidentiary rulings that it hasn't had an opportunity to really do, and then consider summary judgment anew? Yes, Your Honor. As Your Honor might imagine, nothing would make me happier than to see the court reverse the summary judgment grant in its entirety, and I do think there is a possibility of that. I would also understand, however, if the court laying out the proper legal standard to consider both the evidence we submitted and our motion to strike was more comfortable setting forth the rules that the district court should follow and remanding this before the proceedings consistent with that ruling. That would seem to me, candidly, more likely what an appellate court would do in these situations. But if Your Honors feel like there's sufficient evidence, and I believe there is, to warrant reversal of summary judgment entirely, we certainly would be appreciative of that result. Well, that involves weighing of facts, and that may make a difference as to what the district court decides to do on your objection, so I don't think we're in a position to do that. Sadly, Your Honor, I have to agree, which is why I also think reversal and remand is the most likely and probably the most realistic consequence here. So, guidance for the court, I believe, is well found in the associated petroleum case from the Washington appellate court. In that case, the appellate court reversed the grant of summary judgment, indicating that concealment of the fees, they were contractual fees, even though they were included in invoices provided to the purchaser, raised a genuine issue of fact as to whether there was fraud or inequitable conduct, which made summary judgment for accounts stated improper. This is IPI's position. IPI's evidence of fraud by Ping Shun makes summary judgment for accounts stated untenable. Simply stated, IPI's newly discovered evidence that with reasonable diligence could not have been previously discovered by IPI was of such a magnitude that it was likely to change the disposition of the case. The award of summary judgment would not have been granted in light of the evidence of fraud brought forward. Indeed, such evidence of fraud undercuts the very foundation of an account stated claim, that a party can be deemed to have assented actually or constructively to the presented invoice, a conclusion that is logically impossible to reach, where the invoice itself is false. The singular issue that stood in the way of the district court reaching this compelling result was the improper introduction of an unreliable and unauthenticated English language declaration and the improperly authenticated documents through it from the Chinese-speaking Zhang. While the district court failed to rule on IPI's objection to the Zhang declaration and on IPI's motion to strike, the district court nevertheless made it clear that it considered and weighed the declaration improperly characterizing the case over the objection of counsel as a he said, she said case. And I'll unpack that just a bit. It's undisputed that Ms. Zhang does not speak English. Indeed, the record's clear that Wong had served as her translator, including in connection with this case. Zhang's declaration, which is only in English, however, which attached supporting documents, some also in English, contains a translator certification that states that the declaration, quote, is an accurate and correct translation of oral statements made to me by Shanlin Zhang in Mandarin Chinese. This certification doesn't indicate that it's a verbatim transcription of the statements made by Zhang, which it most certainly was not. More importantly, it does not indicate that the declaration was read to Zhang in Chinese to ensure that she understood what she was signing and that the translator had correctly taken down Zhang's statements. In response to the Zhang declaration, IPI filed a motion to strike and argued strenuously before the district court that the Zhang declaration should be struck. In moving to strike the Zhang versus Trans World Airlines and In re Cabral. Both stand for the proposition that a non-English speaking or reading witness is not competent to understand and verify statements written in English. Moreover, both of those cases involve less problematic behavior than that at issue for Zhang. Both cases involve declarations that were prepared by the witness in their native language and thereafter translated to English, but were nevertheless excluded because the English declarations were not read back to the witness in their native language to verify the accuracy of the translation. In this sense, these cases are in accord with the Ninth Circuit case cited by Ping Chung, Matsuda versus Ward, in which the declarant confirmed that his deposition that the declaration he signed had been translated to him. The instant facts are more egregious than those found wanting by the other Ninth Circuit authority. Here, Zhang did not produce a declaration in Chinese and there was no English translation of her Chinese declaration. Rather, the only record was a singular English language declaration, which Zhang did not write and could not read with no indication that the declaration was translated to her in Chinese prior to her signing English language documents. Indeed, while the court offered to allow for discovery to get to the bottom of this issue, the precise pathway utilized in Matsuda cited by Ping Chung, Ping Chung successfully opposed such a deposition over the objection of IPI's counsel. Certainly, Ping Chung should not now benefit from such conduct. Moreover, it's clear from the record that Ping Chung understood the impropriety of the declaration they submitted. A subsequent declaration followed by the same translator in a letter with a later declaration of Zhang states, I further, and I quote, I further certify that the foregoing English translation was read back to Zhang in as being a true and accurate expression of her original Chinese oral statements. With the declaration of Zhang properly excluded, the documents attached to it with it, this would have left the compelling testimony of Wong undisputed and the district court would properly have found, sorry, is properly found to have abused its discretion in not approving it. Thank you. Thank you, counsel. Mr. Mok. Good morning and may it please the court. My name is Samuel Mok. I represent the Apelli Ping Chun Corporation. There are two issues raised on this appeal. One is the challenge to the lower court's grant of summary judgment and the other is a challenge to the lower court's denial of a Rule 60 motion to vacate. I wanted to address the summary judgment decision first. There are two arguments that are principally made by the appellant, IPI. The first is some form of argument in reference to not having counsel during the summary judgment proceeding. It's unclear to me exactly what that argument is about because in the appellant's reply, it seems to backtrack a little bit from claiming it was prejudiced in any way. But the facts are, your honors, that IPI was fully represented by counsel throughout the summary judgment proceeding. The summary judgment motion was fully briefed and also orally argued. The withdrawal of that counsel occurred after the motion had been fully submitted. So I'm not clear what that argument is about as far as any claim of prejudice is concerned. In particular, the counsel who withdrew never served any discovery requests upon Ping Chun and defaulted on its own discovery obligations. This was even after the discovery deadline had been extended. Again, unclear where the prejudice is in regard to that argument. The second argument that IPI brings forth in regard to summary judgment is some claim that there was an alleged mistake made that creates an issue of fact that would undo the account stated that was found. This alleged mistake is based upon an affidavit of the appellant's executive, Mr. Ho Yo Chi, where he says that some invoices had insufficient documentation and was very vague about what particular invoices he was referring to. There was no specification of amounts, no specification of the services that were being used, no identification of what documents were submitted that were deemed insufficient. On the basis of this statement contained in that affidavit, the appellant believes this creates an issue of fact. And respectfully, Your Honors, that does not satisfy the standard for what a given the lower court's basis for granting summary judgment. There were numerous grounds. In fact... Counsel, let me ask you this before you run out of time. Let's assume that we don't find any problem in the district court's grant of summary judgment. Now there's newly discovered evidence and the district court found that it is newly discovered and there was no lack of diligence in obtaining the evidence from the Wong Declaration. There were evidentiary objections asserted by IPI and the district court did not rule on them. Why should we not vacate the summary judgment and send it back for a do-over for the district court to resolve those evidentiary objections and then decide whether that now creates a material issue of fact precluding summary judgment? Thank you, Your Honor, for that question. In order to resolve the Rule 60 issue with great respect, the appellee submits that there's no need to even address the evidentiary challenge made by IPI because they failed to meet the standard of Rule 60 to begin with. Rule 60 requires clear and convincing evidence of fraud that would clearly and convincingly have changed the result of the case. And if we cut away from all of the evidentiary arguments and focus on that standard that must be met first and we look at what the basis of the appellant's claim is, it's based on an alleged whistleblower. Now, the briefs very clearly outline the infirmities of this alleged whistleblower, but for the sake of this issue, I'm going to even for the sake of argument, even if every single word of that alleged whistleblower's affidavit was credited as being true, it would still not rise to the level of clear and convincing evidence. And the reasons for this is as follows. That affidavit makes four principal allegations. The first is an allegation that the appellee allegedly bribed a security guard at the casino. Yet there's no reference to how the security guard testified in this case. In fact, a security guard did not. There's no reference to how the security guard impacted the appellant's ability to detect whether it was overbilled. It was irrelevant. The second principal allegation in this alleged whistleblower's affidavit refers to a housing claim that wasn't even part of the case and not part of the summary judgment. The third had to do with an allegation regarding invoices. These were invoices that were created by the whistleblower himself, that were never submitted to the court, that were never submitted to IPI, the appellant, and there's never any numbers in those alleged fake invoices of some sort. Again, irrelevant, your honors. And the fourth allegation... Counselor, I have a question on that. So IPI had a limited number of employees who were entitled to, what, three meals a day. Couldn't you just do the multiplication to see whether it exceeded what they were paying for? Yes, your honor. That's a very good point, and that's another reason why the lower court's decision should not be disturbed. IPI basically seems to be arguing that it had no ability to detect for this four-year period where approximately 47,000 meals were served, it had no ability to detect that it was being overbilled, even though it had all of the information at its disposal to check. The uncontradicted facts in the lower court summary judgment decision, or in that motion proceeding, was that the parties would meet every month to go over the services that were rendered the prior month. And during this meeting, invoices with supporting documents would be submitted, and that the appellee would not leave that meeting until the appellant indicated it was satisfied with the information it received. And that is in addition to multiple other factors, the lack of objection or lack of complaint that there was anything wrong with these invoices during this four-year period until allegedly March of 2020. There were part payments, there were offers, there were requests for a small discount and a payment plan on the amounts that were owed, and the amounts of $460,000, $450,000, and $400,000. There was even a statement made, and later the appellant, even during the summary judgment proceeding, your honors, conceded that it owed at least $263,000 based on an alleged audit it conducted, and later backtracks from that and now says all of it is at issue. So going back to your honor's point, why they didn't have their chief financial officer, their financial manager, their human resources director, anybody from the company to testify or give a statement to say why in any way they were unable to detect whether they were being overbilled, especially when they were given every month the invoices and supporting documents. They had that information for years. They know who their employees are. Does the new evidence, doesn't that undermine the accuracy of the invoices that they were given? Isn't that the point that IPI is trying to make? Thank you, your honor, and that's another point I would like to address. So the fourth principal allegation in this alleged whistleblower's affidavit has to do with check marks. He says he saw check marks being improperly added to the appellee was making about how many meals were delivered or served. And the problem with that allegation is that there's no testimony from the appellant that indicates check marks was a standard by which invoices were evaluated to be accurate. In fact, what the record shows is that Mr. Chi, the only person who's actually testified on behalf of the appellant, said that signatures was the way he evaluated whether invoices were accurate. And so I think IPI seems to suggest that the appellee can submit a million signatures or as many signatures as they, or I'm sorry, check marks. They can submit as many documents with check marks as they want, and that the appellant would have no way of knowing whether that's accurate and would have to pay that. And that's not true. And that's not the standard, Your Honor, of how IPI's own witness said bills were paid. So therefore, this entire affidavit is irrelevant, even if credited as true. And we have strenuously explained why it's not true, not based even on the affidavit that the appellant is challenging, but even within the four corners of this alleged whistleblower statement. It has self-impeaching aspects to it that raise very obvious questions of logic and of his own credibility. He testified, he didn't mention anything that he was a former employee of the appellant. He didn't mention this relationship. You're making some compelling arguments and you're kind of analyzing why the Wong affidavit fails and doesn't really have any credibility. You're rebutting it point by point in a way that the district court didn't do. So I'm sort of still stuck with what the district court said in connection with the 60B motion. And the district court found that the allegations of fraud are pretty serious, that there's serious, I'm looking at the transcript by the district court, there's serious fraud being committed here. And she said, well, it can't, it's undisputed because they cannot both be true, right? So on the one hand, there are serious allegations of that rebutts a lot of the points. And so the district court never really resolved whether the Zhang declaration is admissible, but it seems to me that the district court relied on the Zhang declaration in making its findings in favor of Ping Shun. So I'm troubled by that because the district court, can the district court rely on a declaration when it hasn't made the initial determination as to whether that declaration is admissible? So Your Honor, if I may address the, I think I heard multiple points or questions in that, in Your Honor's question, I'd like to address it in the order in which I heard it. The first response I want to make is the district court never actually found fraud existed. I believe the statement was, these are serious allegations of fraud or the allegations are serious, but that would of course require it to be true or found to be true in order to actually have happened. I also, actually, I also want to take this occasion to point out something or correct something that the appellant had said. He said the court had stated it was a he said, she said, and that's not actually what it said, what the lower court said. There's only one reference to the term he said, she said. That's on the excerpt of record number 39. Her actual statement was, you're making this a he said, she said when it comes to this claim. So she wasn't saying she saw it as a he said, she said. She was pointing out that counsel was trying to make it so the standard on a rule 60 motion, your honor, is abuse of discretion. And that's on top of the built, the inherent standard of rule 60, which is clear and convincing. And so if I, if we look only at the appellant's affidavit from its alleged whistleblower and do not even consider the appellee's affidavit from its representative, again, we're left with four principal allegations, all of which have no bearing on whether the appellant was overbilled. That is their core claim. They're saying they're overbilled and shouldn't have to pay this debt. And a security guard that never testified, a housing claim that was never part of the case, invoices that were never submitted and created by the alleged whistleblower himself, and check marks, which nobody from the appellant has ever indicated was relevant, was ever used as a standard. So if we just look at that, we don't need, the court need not even address the evidentiary issue. And there's, it doesn't meet the standard of clear and convincing, nor does it meet the requirement that would have changed the results, let alone the abuse of discretion standard. Counsel, do you want to... At the end of this day... I'm sorry. You're over your time, so perhaps you want to sum up. Oh, I apologize. At the end of this day, Your Honor... I thought you were answering Judge Wynn's question, so it's fine, but just summarize now. Yes, Your Honor. At the end of this day, there were documents and exhibits that were not challenged and are not being challenged on appeal that supported the underlying grant of summary judgment, where the appellant admitted, the same Mr. Chi, the executive who appears throughout this proceeding, he admits that they're just trying to delay, or the chairlady, rather, is trying to delay paying this bill, even though they have no objection, or there's no issue with the bill, they just don't want to pay it. And that was never disputed. And if we look at the findings made, it supports the notion that this whole entire proceedings after summary judgment is just simply... There's no sense to it, Your Honors. There was ample grounds and evidence to support summary judgment, and this newly discovered evidence doesn't meet the standard of clear and convincing, wouldn't have changed the results, and it wasn't an abuse of discretion. Thank you. Thank you, counsel. I think you used all your time, but I'll give you... He's got time? Oh, okay, you have time. Go ahead. Thank you, Your Honor. I will perhaps start where my colleague finished off. The essence of this claim is for account stated, and the essence of an account stated claim relies on the integrity of the invoices that are presented by being shown, in this case, to IPI. And... Counsel, doesn't it also depend on your client having assented to the invoices? It does, Your Honor. And isn't it the fact that your client had all the information to determine whether or not the invoices presented were accurate? Two things, Your Honor. One, I think there's precedent in the cases we've cited that even if, and in the particular case that I mentioned, the associated petroleum case, even when the document was embedded in a pack of invoices, summary judgment was found inappropriate by the Washington Court of Appeals because it was hidden. That's the nature of it, and it vitiates any actual or implied assent. In this case, it's even more so because... Counsel, could you explain the difference in the two parties' views as to the significance of the check marks versus the signatures as the basis for the invoices? Absolutely, Your Honor. There's two set ways in which Ping Shun prepared and delivered meals to IPI. One was through restaurants, and at the restaurants, employees would come, they'd sign their name, and then depending on whether they took one meal, two meals, or three meals for that day, a check mark next to their name was put by the Ping Shun representative, and that was the other. With respect to signatures, IPI had dormitories, and Ping Shun would deliver mass quantities of meals to the dormitories. It's undisputed that Ping Shun had absolute control over all those records. The whistleblower's testimony is that with respect to the check marks, at the end of the month, he witnessed the principal, Ms. Zhang, adding check marks where people might have enjoyed one meal. She made it three and did that on a very large scale. With respect to the signatures, she failed to obtain signatures from a number of people. IPI actually is on the record as having complained about that, and that is where the bribery comes in. She went and paid $5,000 to a security guard in an effort to bribe him to say that he was a lack of signatures. This is the essence of the fraud. It could not have been discovered by IPI and wasn't without a whistleblower coming forward and saying the check marks that were made to demonstrate all the meals were fake. Even though Ping Shun may have come over once a month with records in their hand that supported the underlying, or sorry, the invoices, they took those back with them each month. Even if one could try to sense a check mark made after the fact from one before, the reality is when they were brought back after looking at them for only a few minutes, they had no realistic opportunity. As your honor's example gave, it wasn't simply a matter of multiplying. You couldn't just multiply how many employees by how many meals because some employees only took one meal a day, but this was done through a fraud where they would enhance significantly the number of meals both taken in restaurants and through signatures at delivered facilities. Did the security guard ever testify to that effect? The security guard did not testify to that effect because this was done on summary judgment and they never were required to bring a man as a witness. No, but if they bribed him, they didn't use whatever they bribed him to do, right? That is correct, but it's certainly evidence of the misconduct that was ongoing and we think it's at least relevant that these invoices were fraudulent. At bottom, that is really the bottom line here is that the IPI was presented with fraudulent invoices. They can't be deemed to have assented where there was underlying fraud in those invoices and the judge in evaluating this evidence very clearly weighed the affidavit of the whistleblower Wong against Ms. Zhang without properly evaluating its admissibility and in our humble contention, its inadmissibility. All right, thank you, counsel. Ping Shum versus Imperial Pacific International will be submitted.
judges: WARDLAW, NGUYEN, OWENS